## Case No. 10,717.

### PARK v. WILLIS.

[2 Cranch, C. C. 83.] [1]

Circuit Court, District of Columbia. Nov. Term, 1813.

SLAVERY — ACTION FOR CARRYING SLAVE AWAY— VIRGINIA STATUTE—AUTHORITY FROM OWNER.

By the Virginia law of 25th January, 1798, §§ 6, 7, a master of a vessel is liable to the owner of a slave for his loss, if he takes the slave out of the county of Alexandria, in the District of Columbia, without a written authority from his owner, or a compliance with the other requisites of that act; and a general hiring to the defendant for eleven months, without any limitation as to the nature or place of his employment, is not such a permission as the act requires, although the plaintiff knew that the defendant's occupation was that of a master of a vessel, and the slave was a seaman. The person to whom the slave is hired is not the owner within the meaning of the statute.

This was an action on the case founded upon the Virginia laws of December 17, 1792, p. 192, § 50, and January 25, 1798, p. 374, §§ 6, 7; by the first of which it is enacted that no master of a vessel shall transport out of the commonwealth any servant or slave without the consent or permission of the person to whom such servant or slave doth of right belong, upon penalty of $150 for a servant, and $300 for a slave; one moiety to the commonwealth and the other to the owner; and such master shall moreover be liable to the suit of the party grieved, at the common law for his damages. By the act of 25th January, 1798, it is enacted, that no master of a vessel shall transport, &c., "any negro or mulatto," out of the commonwealth, on any pretext whatsoever, until he shall have produced him before some magistrate, &c., and lodged a description of the negro or mulatto, and a declaration of the place to which he is bound, and a certificate of freedom, &c., or the written direction of the owner of the negro or mulatto, commanding or permitting such master to carry him out of the commonwealth; under penalty of $500 for every negro or mulatto so carried, &c., to be recovered by action of debt by any person who will sue for the same; and such master shall moreover; be liable to the action of the owner of such negro or mulatto, &c. The first count stated that on the 25th of December, 1802, the plaintiff was the owner of a negro man slave named Anthony, in the county of Alexandria, of the value of $500, and the defendant was then and there the master of a certain vessel called the Hope, of Alexandria; and the defendant, well knowing that the said slave belonged to the plaintiff, did on that day transport the said slave in his said vessel, out of the District of Columbia and out of the commonwealth of Virginia, to wit, to the city of Philadelphia in the state of Pennsylvania, without the consent of the plaintiff. In consequence of which said transportation the said slave ran away and absconded at the city of Philadelphia, and was totally lost to the plaintiff. The second count stated that the plaintiff was the owner of the slave, and the defendant was the master of the vessel then lying in the river Potomac adjoining the county of Alexandria; that the defendant well knowing, etc., transported said slave out of the District of Columbia, and out of the commonwealth of Virginia, to wit, to the city of Philadelphia, in the state of Pennsylvania, without having produced the said negro slave before any magistrate of the county adjoining which the said vessel lay, and without having lodged with any such magistrate a description of the said negro, his name, probable age, and alleged place of birth, and a declaration of the place or port to which the defendant was bound, and without having produced to any such magistrate any certificate of freedom granted to the said negro, or the written direction of the plaintiff, commanding or permitting him to carry the said slave out of the District of Columbia or commonwealth of Virginia,—in consequence of which said transportation, the said slave absconded and was totally lost to the plaintiff, contrary to the statute in that case made and provided, whereby the plaintiff was injured and sustained damage to the amount of $700, and therefore he brings suit.

The jury, in a special verdict, found the following facts: That the defendant, on the 29th of January, 1802, hired the plaintiff's negro slave Anthony, in Alexandria, in the District of Columbia, by the following written agreement: "I have, this 29th of January, 1802, hired of James Wilson, agent of James Park, a negro man named Anthony, from this time until the 1st day of January, 1803, eleven months and two days, for $110, and to furnish the said negro with every thing necessary except his clothing and taxes, and which sum I promise to pay to the said James Wilson in quarterly payments, as witness my hand and seal this 29th day of January, 1802, Abel Willis. Attest: Rob't Compar, Jr." They found no restriction as to the defendant's right of employing the slave, or taking him out of the District of Columbia, or state of Virginia. They found that the defendant did transport him from the town of Alexandria, in the sloop Hope, whereof the defendant was master and owner, into the city of Philadelphia, in the state of Pennsylvania, where the slave made his escape before the expiration of the term for which he was hired. That the defendant used due diligence in endeavoring to recover the slave; but he was never recovered, and is lost to the plaintiff. That the defendant had, previous to the hiring of said slave, been in the habit of trading to Philadelphia, in the sloop Polly, but having sold his interest in that vessel, he purchased the said sloop Hope, took the command of her, and es-

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

tablished her as a packet between Alexandria and Norfolk, and afterwards made two voyages in her to Philadelphia, in the last of which the said slave made his escape. That the defendant did not produce the said negro slave before a magistrate nor lodge a description, etc., nor produce a written direction from the owner, etc., as required by the act of the 25th of January, 1798. And if the law be for the plaintiff, they assessed his damages at $453; but if for the defendant, etc.

Upon this special verdict, after it had been amended by consent, THE COURT (THRUSTON, Circuit Judge, absent) was of opinion that the law was for the plaintiff, and rendered judgment accordingly.

There had been several previous attempts to obtain a verdict in the cause, but the jurors could not agree. On Saturday, the 2d of December, 1809, the jury having been out all night, came into court, and requested the instruction of the court, whether, under the act of 1798, p. 374, § 6, the defendant was not liable if he took the slave out of Virginia without a written authority, or a compliance with the other requisites of that act; and whether the written agreement for the hire of the negro was such a written authority as the 6th section of that act requires.

Mr. Jones and E. J. Lee, for plaintiff.
C. Lee and Mr. Taylor, for defendant.

THE COURT instructed the jury that the defendant was liable in the case stated by them, and that the written agreement was not such a written permission as the act requires.

That jury could not agree, and were discharged by consent. The cause came on again before another jury, at July term, 1811, when THE COURT (THRUSTON, Circuit Judge, absent) refused to instruct the jury that a general hiring by the defendant authorized him to carry the slave to Philadelphia, and refused to instruct them that if the course of the defendant's business was known to the plaintiff's agent at the time of the hiring, it authorized the defendant to take the slave out of the state of Virginia. And also refused to instruct them that the defendant, by the hiring, became the owner of the slave for the term for which he was hired.

The same opinions and instructions were given upon the last trial, and bills of exceptions were taken, but no writ of error was prosecuted.